IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:09-CR-395-2 |
| | ) | |
| GREGORY STEENBLOCK | ) | |

**DEFENDANT GREGORY STEENBLOCK'S MOTION TO DISMISS SUPERSEDING INDICTMENT UNDER THE SPEEDY TRIAL ACT**

NOW COMES Defendant Gregory Steenblock ("Mr. Steenblock"), through counsel and pursuant to the Speedy Trial Act of 1974, 18 U. S. C. §3161 *et seq.* ("the Act" or "the STA"), and respectfully moves the Court to dismiss the Superseding Indictment against him.

### I. NATURE OF THE MATTER BEFORE THE COURT

The government has failed to meet its burden under the Speedy Trial Act to bring Mr. Steenblock to trial in the statutorily prescribed period of time. The Act allows the government seventy days from the later of Mr. Steenblock's indictment or initial appearance to bring its case against him to trial. § 3161(c)(1). Mr. Steenblock's initial appearance in this matter occurred on December 2, 2009. Since that time, after accounting for the exclusions of time allowed under the Act, 153 non-excludable days have elapsed—more than double the time allowed under the Act. The government's failure to bring this case to trial within the time mandated by the Act requires immediate dismissal.

## II. FACTS

The facts relevant to the Speedy Trial Act calculation are as follows:

| Date | Event |
|---|---|
| November 30, 2009: | Indictment [DE 2]. |
| December 2, 2009: | Initial appearance before United States Magistrate Judge P. Trevor Sharp. |
| December 16, 2009: | The defendants file a consent motion to continue [DE 15]. |
| December 18, 2009: | The Court enters a written order granting the motion to continue and ordering that "the time between January 11, 2010 and April 12, 2010 is excluded under Title 18, United States Code, Sections 3161(h)(7)" [DE 16]. |
| January 11, 2010: | An excludable period begins to run pursuant to the terms of the Court's order of December 18, 2009. |
| April 6, 2010: | The Court's Scheduling Order sets, *inter alia*, a pretrial motions deadline of April 14, 2010 and a hearing on any motions for May 3, 2010. |
| April 12, 2010: | The excludable period set by the Court's December 18, 2009 Order expires, but pretrial motions are filed [DE 39 & 40]. |
| May 3, 2010: | Motions hearing held pursuant to Scheduling Order. |
| May 27, 2010: | The Court enters a memorandum opinion and order denying the defendants' motions to dismiss [DE 66]. |
| May 28, 2010: | House of Raeford files a notice of appeal of the Court's denial of its motion to dismiss on double jeopardy grounds [DE 67]. |
| March 11, 2011: | The Fourth Circuit issues its mandate [DE 80]. |
| April 7, 2011: | House of Raeford files an unopposed motion to stay the jury trial pending its petition to the U.S. Supreme Court for a writ of certiorari [DE 82]. |
| April 21, 2011: | The Court construes the April 7, 2011 motion to stay as a motion to continue, grants the motion, and excludes from the STA calculation "the time from the date of th[e] Order until the resolution of such Petition and proceedings." [DE 83]. |

| October 3, 2011: | The Supreme Court denies House of Raeford's petition for writ of certiorari. |

### III. ANALYSIS

The Speedy Trial Act of 1974 provides that, in "any case in which a plea of not guilty is entered, the trial . . . shall commence within seventy days" from the later of the "filing date" of the information or indictment or the defendant's initial appearance before a judicial officer. 18 U.S.C. §3161(c)(1). The Act further provides that certain "periods of delay shall be excluded in computing . . . the time within which the trial . . . must commence." § 3161(h). Those relevant "periods of delay" include:

> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to-
> . . .
>
> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion [hereinafter "subsection (h)(1)(D)"]; [and]
> . . .
>
> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court [hereinafter "subsection (h)(1)(H)"].[1]

---

[1] 18 U.S.C. §§ 3161(h)(1)(D) & (H). On October 13, 2008, Congress amended portions of 18 U.S.C. § 3161(h) to repeal obsolete statutory cross references. Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406, § 13, 122 Stat. 4291. The amendments made no substantive changes to the statutory provisions at issue here, but several of the relevant subparagraphs were re-designated as a result. As principally relevant here, § 3161(h)(1)(F) is now § 3161(h)(1)(D), § 3161 (h)(1)(J) is now 3161 (h)(1)(H), and § 3161(h)(8) is now § 3161(h)(7). This brief uses the new designations. For clarity's sake, case quotations referring to the prior designations have been altered to reflect the new designations.

In *Henderson v. United States*,[2] the Supreme Court explained the proper application of these statutory provisions in calculating the periods of excludable delay related to the disposition of pretrial motions. The Fourth Circuit's distillation of *Henderson*'s essential holding is instructive:

> In *Henderson* . . . the Supreme Court interpreted subparagraphs [(D)] and [(H)] of § 3161(h)(1) and recognized that the former subparagraph mandates a distinction between pretrial motions that require a hearing and those that do not. Where a hearing is required, subparagraph [(h)(1)(D)] excludes the entire period from the filing of the motion to the conclusion of the hearing on that motion, regardless of whether any delay in holding the hearing was "reasonably necessary." Once the court has held the hearing and received any post-hearing submissions from the parties that it needs for proper disposition of the motion, the court takes the motion "under advisement" and subparagraph [(h)(1)(H)] excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion. If the pretrial motion requires no hearing, sub paragraph [(h)(1)(D)] excludes the period from the filing of the motion to the time the court receives all the papers it reasonably expects. Once the court has received the papers, the motion "is actually under advisement" and subparagraph [(h)(1)(H)] excludes up to 30 additional days thereafter, up to and including the date on which the court finally disposes of the motion.[3]

*United States v. Parker*, 30 F.3d 542, 546 (4th Cir. 1994) (citations omitted).

If the government fails to comply with Speedy Trial Act's seventy-day deadline, dismissal is mandatory. 18 U.S.C. § 3162(a)(2); *see also United States v. Taylor*, 487 U.S. 326, 332 (1988) ("[T]he statute admits no ambiguity in its requirement that when such a violation has been demonstrated, 'the information or indictment shall be dismissed

---

[2] 476 U.S. 321 (1986).

[3] For purposes of the STA, a court "finally disposes of the motion" when either (1) the clerk officially files the judge's written decision or (2) the judge renders his decision orally in open court, whichever is earlier. *Parker*, 30 F.3d at 547 n.1 (citing *United States v. Martinez*, 749 F.2d 623, 625 n.1 (11th Cir. 1984)).

4

on motion of the defendant.'")(quoting § 3162(a)(2)); *accord Zedner v. United States*, 547 U.S. 489, 499 (2006) ("If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges . . . .").

> **A. The Government Violated the Speedy Trial Act by Allowing More than Seventy Days Of Non-Excludable Time To Elapse After Mr. Steenblock's Initial Appearance.**
>
> > *1. Non-Excludable Time Between Mr. Steenblock's Initial Appearance and Consent Motion To Continue: Thirteen Days.*

In this case, the Speedy Trial Act's seventy-day period (the "STA Clock") was triggered on December 2, 2009—the date of Mr. Steenblock's initial appearance. *See* 18 U.S.C. § 3161(c)(1). That date is not included in STA Clock calculation. *See, e.g., United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996) ("[t]he day of the event that triggers the STA clock, *i.e.*, the filing or opening of the indictment or the initial appearance, is not included in the calculation; the clock begins to run the following day."). Thus, the first non-excludable day for purposes of the STA Clock was December 3, 2009.

Once triggered, the STA Clock ran until December 16, 2009, when the defendants filed a consent motion to continue trial [DE 15]. Under Fourth Circuit law, the day the motion was filed, December 16, is excluded from the STA Clock calculation. *Stoudenmire*, 74 F.3d at 63. Thus, from the time the STA Clock was triggered on

5

December 2, 2009 until the time the consent motion to continue was filed on December 16, 2009, thirteen non-excludable days elapsed.

The STA Clock was tolled between December 16, 2009 and December 18, 2009, while the fully-briefed motion to continue was under advisement and awaiting the Court's disposition. On December 18, the Court entered a written order granting the motion, continuing the trial, and excluding the time between January 11, 2010 and April 12, 2010 under 18 U.S.C. § 3161(h)(7) [DE 16]. Having resolved the only pending motion at that time, the STA Clock began to run again upon entry of the December 18, 2009 order.

> 2. *Non-Excludable Time Between Entry of December 18, 2009 Order and Commencement of Excludable Period Beginning January 11, 2010: Twenty-Three Days.*

The STA Clock ran from December 18, 2009 until January 11, 2010, when, pursuant to the terms of the Court's December 18th order, an excludable time period began. Between December 18, 2009 and January 11, 2010, twenty-three days of non-excludable time elapsed, bringing the total number of non-excludable days on the STA Clock to thirty-six. Thereafter, no further non-excludable days elapsed until after the Fourth Circuit issued its mandate on March 11, 2011.

During the excludable period from January 11, 2010, through and including April 12, 2010, the grand jury returned a superseding indictment, which contained minor changes to the same fourteen counts that had been charged in the original indictment. Because the changes were minor, the superseding indictment did not restart the STA Clock. *See United States v. Hopkins*, 310 F.3d 145 (4th Cir. 2002) (measuring Speedy

6

Trial Act clock from date of initial indictment, where superseding indictment merely amended existing counts); *accord, e.g., United States v. Santiago-Becerril*, 130 F.2d 11, 19 (1st Cir. 1997) ("The . . . superseding indictment . . . did not restart [defendant's] STA clock because it was based on the original charges.") (citations omitted). Before the end of the excludable period designated by the Court's December 18, 2009 order, the parties filed various pretrial motions, so the STA Clock did not restart at the end of the period set by the Court.

The Court entered a Scheduling Order on April 6, 2010, setting a hearing on any pretrial motions for May 3, 2010. At the hearing, the Court ruled from the bench on several motions and reserved ruling on others. Thus, the STA Clock remained tolled for thirty days thereafter. *See Henderson*, 476 U.S. at 328−30 (holding that STA Clock is tolled by pending motion for up to thirty days after hearing); *Parker*, 30 F.3d at 546 (same). Accordingly, the excludable period related to the pending pretrial motions ran until June 3, 2010.

On May 27, 2010 the Court entered a written order denying the defendants' Motions to Dismiss for violation of the double jeopardy clause of the Fifth Amendment [DE 66]. The following day, House of Raeford filed a notice of appeal to the Fourth Circuit seeking review of the Court's ruling on the motion to dismiss on grounds of double jeopardy [DE 67]. Because of the appeal, the period from June 3, 2010 to March 11, 2011—when the Fourth Circuit issued its mandate—is excludable pursuant to § 3161(h)(1)(c) (excluding "[d]elay resulting from any interlocutory appeal.").

7

Case 1:09-cr-00395-JAB   Document 87   Filed 01/03/12   Page 7 of 16

### 3. Non-Excludable Time From Fourth Circuit Mandate Until Motion To Stay Pending Petition For Writ Of Certiorari: Twenty-Six Days.

As noted in the Court's June 18, 2011 Order, the STA Clock began to run again after March 11, 2011, when the Fourth Circuit issued its mandate [DE 83]. It ran for twenty-six days—until April 7, 2011, when the defendants filed a consent motion to stay pending House of Raeford's petition for certiorari [DE 82]. That brought the total period of non-excludable time to sixty-two days.

The period of time between the filing of the consent motion to stay on April 7, 2011 and the Court's disposition of the motion on April 21, 2011, is excludable. *See Parker*, 30 F.3d at 546. The Court's order of April 21, 2011 construed the consent motion to stay as a request for a continuance and granted that request, excluding "the time from the date of this Order until the resolution of such Petition [for Certiorari]." [DE 83]. The resolution of the Petition occurred on October 3, 2011, when it was denied by the Supreme Court.

### 4. Non-Excludable Time From Supreme Court's Order Denying Certiorari to the Present: Ninety-One Days.

Under the Court's April 21, 2011 order, the continuance of the trial and the exclusion of time under the STA both expired on October 3, 2011, when the Petition for Certiorari was resolved. However, the government did not bring the case to trial. Since sixty-two days already had elapsed, the STA Clock reached its seventieth day on October 11, 2011. As of the filing of this motion on January 3, 2012, the total stands at 153 non-excludable days. Consequently, the charges against Mr. Steenblock must be dismissed.

### B. The Dismissal Should Be With Prejudice.

Dismissal under the Speedy Trial Act may be with or without prejudice, in the Court's discretion. *See United States v. Jones*, 887 F.2d 492 (4th Cir. 1989). In determining whether to dismiss a case with or without prejudice, a district court must consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. 18 U.S.C. § 3162(a)(2). Moreover "the presence or absence of prejudice to the defendant" is also "relevant for a district court's consideration." *Taylor*, 487 U.S. at 334.

#### 1. The Crimes Alleged Against Mr. Steenblock Are Not Serious Offenses.

The First Circuit offers a helpful explanation of the first prong of the § 3162(a)(2) multifactor test:

> This aspect of the test centers primarily on society's interest in bringing the particular accused to trial. The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence.

*United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988). The government is prosecuting Mr. Steenblock for alleged offenses that he did not personally commit,[4] that

---

[4] The government's case against Mr. Steenblock is based on the Responsible Corporate Officer doctrine [DE 61 p. 27]. It is seeking to pursue a theory at trial that he is guilty of violating the Clean Water Act for merely being aware of alleged bypasses of untreated wastewater from the poultry processing facility and failing to take adequate steps to prevent those alleged violations, irrespective of whether he was actually involved or even present for the alleged violations.

9

did not harm the environment,[5] and the causes of which were remedied more than five years ago.[6] The charges against him are of so little significance that dismissing them with prejudice will not harm any societal interest.

The essence of this case is a dispute between the City of Raeford and House of Raeford regarding the company's wastewater pretreatment program. That dispute only tangentially involved Mr. Steenblock. More importantly, it was resolved to the satisfaction of the City and House of Raeford more than five years ago, through the implementation of a consent order that required House of Raeford to upgrade its wastewater pretreatment facilities [DE 20 Exhibit C; *see also* DE 55 Exhibit J]. Because this prosecution is essentially a relitigation of issues that have been previously resolved between other parties, society's interest in the reprosecution of Mr. Steenblock is minimal. *See United States v. Bundu*, 479 F. Supp. 2d 195, 199 (D. Mass. 2007) ("[T]he instant case presents a situation of a more personal dispute between warring parents rather than a crime of societal importance . . . this court simply does not perceive a great

---

[5] *See* Performance Annual Report 2005, Raeford Wastewater Treatment Plant (attached as Exhibit 1) (reflecting that the City's wastewater treatment plant was "in compliance with all testing parameters"—that is, it was able to fully and effectively treat all of the City's wastewater, including what it received from House of Raeford—during all the months in 2005 during which the Superseding Indictment alleges offenses by House of Raeford); Performance Annual Report 2006, Raeford Wastewater Treatment Plant (attached as Exhibit 2) (reflecting that, for the entire calendar year 2006: "The City has been in compliance for all permit limits."). Along with these new exhibits, Mr. Steenblock hereby offers into evidence again the exhibits previously submitted with docket entries 20, 28, 39, 54 and 55, all of which were tendered to the Court and offered into evidence in support of the defendants' previous pretrial motions.

[6] It is undisputed that House of Raeford was working to install upgrades to its pretreatment system during the indictment period, that it completed those upgrades one month after the last alleged offense, and that the upgrades successfully solved the underlying problems [DE 55 Exhibit J].

10

societal interest in continuing to prosecute a personal dispute which the parties themselves have resolved.").

Moreover, even if the issues had not been resolved years ago, and even if Mr. Steenblock had been personally involved in the alleged conduct, the absence of any environmental harm makes this case uniquely insignificant. Research indicates that, in 2009, the DOJ Environment & Natural Resources Division issued twenty-one press releases regarding CWA enforcement proceedings [DE 20 Exhibit E]. In only one case—this case—was there a felony indictment without any environmental harm. Even in the fifteen civil cases, every single one involved harm to the environment. *Id.*

Viewing all those factors together—the complete absence of environmental harm, the successful solution of House of Raeford's pretreatment issues more than five years ago, and the derivative nature of the government's theory against Mr. Steenblock—the charges against Mr. Steenblock are an outlier of insignificance.

### 2. The Government's Negligence Warrants Dismissal With Prejudice.

Three months have gone by since the House of Raeford's petition for certiorari was resolved. That ended the continuance and restarted the STA Clock under the terms of the court's April 21 order, but the government has done nothing to bring this case to trial. During that time—which has more than doubled the STA limit—Mr. Steenblock has borne and continues to bear the burdens associated with living in the shadow of a federal indictment. The Supreme Court succinctly and accurately described the hardships faced by Mr. Steenblock in *Taylor*:

11

> Inordinate delay between public charge and trial, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

487 U.S. at 340 (quoting *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)) (internal alterations omitted).

Even if the government's failure to satisfy its Speedy Trial obligation is due to oversight, as it appears to be in this case, dismissal with prejudice is appropriate. In applying the STA in *United States v. Caparella*, the Second Circuit reversed a district court's dismissal without prejudice and directed dismissal with prejudice. 716 F.2d 976, 980 (2d Cir. 1983) ("We believe that the dismissal here should have been with prejudice and that the Magistrate's finding to the contrary, adopted by the district court, constituted an abuse of discretion."). The court explained:

> [T]he record establishes that the prosecutor's negligence was the sole cause of the failure to comply with the Act's time requirements. The government's only explanation for the lack of diligence displayed was that it was simply an oversight; no other excuse was proffered. . . . Meeting established time limitations is important and lack of attention or dilatoriness in observing them should not be encouraged by courts viewing such neglect tolerantly.

*United States v. Caparella*, 716 F.2d 976, 980 (2d Cir. 1983); *see also United States v. Harden*, 1998 WL 390479155, at *3 (4th Cir. 1998) (per curiam) (affirming dismissal with prejudice based on negligent violation of STA).

The government was required by the Act to bring Mr. Steenblock to trial within seventy days of his arraignment. That its failure to do so appears attributable to neglect rather than intent does not absolve the government of responsibility for its failure, or in any way lessen its serious impact on Mr. Steenblock.

> 3. *Allowing The Reprosecution Of Mr. Steenblock Would Undermine The Purposes Of The Act And Would Fail To Encourage The Efficient Administration Of Justice.*

The third factor of the § 3162 analysis is closely related to the first two factors. It depends, in large part, on the seriousness of the alleged crime, the reasons for the delay, and the prejudice to the defendant. *United States v. Wright*, 6 F.3d 811, 816 (D.C. Cir. 1993). "The Speedy Trial Act is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." *United States v. Iaquinta*, 674 F.2d 260, 264 (4th Cir. 1982). Reprosecution should not be allowed when it "would essentially provide an end run around the Speedy Trial Act." *United States v. Yalartai*, 2008 WL 4446685, at *3 (W.D.Va. 2008). Allowing reprosecution of this case would allow the kind of "end run" of the Act that is to be avoided. Mr. Steenblock would still be faced by the jeopardy of criminal prosecution, but the only consequence to the government would be further delay in bringing the case to trial.

Delay by its very nature has some prejudicial effect, "as recollections fail, and witnesses become unavailable. Also, the uncertainty itself is a burden on the accused." *United States v. Koch*, 438 F.Supp. 307, 309 (S.D.N.Y. Oct. 6, 1977). This prejudice is compounded when—as detailed above—the charges against the accused are not serious.

13

Justice has already been served with regard to the matters described in the Superseding Indictment. The sporadic overflows in House of Raeford's wastewater pretreatment system—which the government alleges were "bypasses" under House of Raeford's Permit—ended over five years ago. House of Raeford spent approximately $1.4 million to fix the problems that caused them, and before the upgrade was complete it paid the City more than $950,000 in fines and penalties [DE 20 Exhibit D; DE 55 Exhibits G, H]. Thus, in a case where no actual harm occurred, the risk of future harm has already been eliminated, and the alleged wrongdoer has already been punished.

Under those circumstances, there could be no "justice" in reprosecuting Mr. Steenblock. The Responsible Corporate Officer doctrine, while courts have allowed its use, is at best a significant departure from the criminal law's historical *mens rea* requirements. Its attenuation of the connection between criminal act and criminal actor undermines the idea that convicting Mr. Steenblock would deter him from further misconduct. On the contrary, any such argument is thoroughly refuted by Mr. Steenblock's continuing performance as the plant manager for House of Raeford's processing facility. It has been on his watch that House of Raeford has achieved compliance with its wastewater pretreatment requirements, and has maintained compliance since 2006. In addition to the absence of deterrence, the government's reliance on the Responsible Corporate Officer also undermines a "just desserts" rationale for reprosecuting Mr. Steenblock. The theory of retributive justice is grounded on the moral claim that an individual ought to be punished for his criminal act. *See Graham v. Florida*, ___ U.S. ___, ___, 130 S. Ct. 2011, 2028 (2010) ("[t]he heart of the retribution

rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender.") (quoting *Tison v. Arizona*, 481 U.S. 137, 149 (1987)). In this case, though, the government is seeking to punish Mr. Steenblock for not adequately preventing the alleged conduct of others.[7]

Reprosecution of Mr. Steenblock will not further the administration of the Act or of justice. On the contrary, it will undermine both.

## IV. CONCLUSION

For the foregoing reasons, Mr. Steenblock respectfully requests that the charges against him be dismissed with prejudice.

This the 3rd day of January, 2012.

>/s/ Gerald Beaver
>H. GERALD BEAVER
>N.C. State Bar No. 5503
>BEAVER HOLT STERNLICHT
>  & COURIE, P.A.
>P.O. Drawer 2275
>FAYETTEVILLE, NC 28302
>910-323-4600
>hgbeaver@beaverholt.com

---

[7] The other major justifications for punishment—incapacitation and rehabilitation—are not implicated by this case. *See Ewing v. California*, 538 U.S. 11, 25 (2003).

## CERTIFICATE OF SERVICE

I hereby certify that, on the date below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

    Kearns Davis, Esq.

    Darrell A. Fruth, Esq.

    Julia C. Ambrose, Esq.

    Wes J. Camden, Esq.

    Ripley Rand, Esq.

    Frank Chut, Esq.

    Daniel W. Dooher, Esq.

    Mary Dee Carraway, Esq.

This the 3rd day of January, 2012.

                                                /s/ Gerald Beaver
                                                H. Gerald Beaver