IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA           :

           v.                      :

HOUSE OF RAEFORD FARMS, INC., :           1:09CR-395-1

GREGORY STEENBLOCK                 :           1:09CR-395-2


**BRIEF OF THE UNITED STATES IN OPPOSITION TO
DEFENDANTS GREGORY STEENBLOCKS AND HOUSE OF RAEFORD'S MOTION TO
DISMISS SUPERSEDING INDICTMENT UNDER THE SPEEDY TRIAL ACT**

The United States opposes Defendants' Motions to Dismiss the
Superseding Indictment Under the Speedy Trial Act.  The
defendants' motions and calculations fail to account for
excludable time resulting from their motion to continue the trial
because they needed additional time to prepare; pending motions
that were filed and on which argument was heard; pending motions
on which no argument was heard; and the United States' immediate
notification that defendant House of Raeford's petition for a
writ of *certiorari* had been denied.  The motion should be denied
and the case calendared for trial.


## I. NATURE OF MATTER BEFORE THE COURT

Defendants House of Raeford Farms, Inc. ("House of Raeford")
and Gregory Steenblock ("Steenblock") each has been indicted on
fourteen felony violations of the Clean Water Act.  As alleged in

the Superseding Indictment, defendants knowingly bypassed and caused the bypass of untreated wastewater from the House of Raeford pretreatment system to the sewer system which leads to the City of Raeford ("City") wastewater treatment plant, in violation of a permit issued by the City in accordance with the Clean Water Act. Defendant Steenblock has filed a Motion to Dismiss the Superseding Indictment Under the Speedy Trial Act and Defendant House of Raeford has filed a Motion to Adopt Steenblock's motion and arguments.[1] Defendants' briefs argue that the Government violated the Speedy Trial Act by allowing more than seventy days of non-excludable time to elapse after Steenblock's initial appearance and that the court should dismiss this case with prejudice. As discussed below, defendants' arguments are without merit, there has been no violation of the Speedy Trial Act, and the Motion to Dismiss the Superseding Indictment Under the Speedy Trial Act should be denied. If the Court is inclined to grant defendants' motions, it should do so without prejudice.

## II. STATEMENT OF FACTS

The facts relevant to the Speedy Trial Act calculation and argument are as follows:

November 30, 2009:      Indictment. (Dkt. No. 2).

---

[1] Accordingly and where applicable, the United States' response will address the arguments as they apply to both defendants.

2

| | |
|---|---|
| December 2, 2009: | Initial appearance of both defendants. |
| December 16, 2009: | Defendants filed a consent motion to continue the January 11, 2010 trial until the April trial term. (Dkt. No. 15). |
| December 18, 2009: | The court entered a written order granting the motion to continue and ordered that "the time between January 11, 2010 and April 12, 2010 is excluded under Title 18, United States Code, Sections 3161(h)(7)." (Dkt. No. 16). |
| December 19, 2009: | Excludable time began running upon filing of defendants' continuance motion and court's order of December 18, 2009. |
| February 26, 2010 | Defendant House of Raeford filed Motion to Dismiss Indictment. (Dkt. No. 20). |
| February 27, 2010: | Defendant House of Raeford filed Motion to Compel Discovery; excludable time period continued to run. (Dkt. No. 21). |
| March 1, 2010: | Defendant Steenblock filed Motion to Dismiss Indictment and adopted Defendant House of Raeford's Motion to Compel Discovery. (Dkt. No. 22). |
| March 17, 2010: | United States filed Motion to Compel Discovery; defendant House of Raeford filed Motion to Strike Portions of the Indictment and to Require Election; defendant Steenblock filed Motion to Strike Portions of the Indictment and to Require Election and Motion to Adopt. (Dkt. No. 30, 31, and 32). |
| March 31, 2010: | Superseding Indictment.[2] |
| April 6, 2010: | Arraignment of both defendants on Superseding Indictment; the court's Scheduling Order set a pretrial motions deadline of April 14, 2010 and a hearing |

---

[2]  Superseding Indictment charged no new offenses.

3

|                     | date of May 3, 2010.                                                                                                                                           |
|---------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------|
| April 12, 2010:     | Defendant House of Raeford filed Motion to Dismiss Superseding Indictment and Motion to Strike Surplusage from Superseding Indictment; (Dkt. No. 39, 40).       |
| April 13, 2010      | Defendant Steenblock filed Motion to Strike Surplusage from Superseding Indictment and Motion to Adopt and Motion to Strike Surplusage and Motion to Adopt. (Dkt. No. 41, 42). |
| April 14, 2010:     | United States filed Motion in Limine to Exclude Evidence. (Dkt. No. 44).                                                                                        |
| May 3, 2010:        | Pretrial Motions Hearing.                                                                                                                                       |
| May 27, 2010:       | The court entered an order and memorandum opinion denying defendants' Motion to Dismiss the Superseding Indictment. (Dkt. No. 66).                              |
| May 28, 2010:       | Defendant House of Raeford filed Notice of Appeal. (Dkt. No. 67).                                                                                               |
| June 3,2010:        | Joint Motion to Stay filed by defendants House of Raeford and Steenblock. (Dkt. No. 70).                                                                        |
| June 10, 2010:      | Judge Thomas D. Schroeder entered order determining that a non-waivable conflict arose and directed clerk of court to reset all further matters in the case before another district court judge. |
| June 21, 2010:      | Chief Judge James A. Beaty, Jr. issued order granting Motion to Stay as to both House of Raeford and Steenblock. (Dkt. No. 73).                                 |
| June 24, 2010:      | Case reassigned to Chief Judge James A. Beaty, Jr.                                                                                                              |
| October 18, 2010:   | The Fourth Circuit dismissed defendant House of Raeford's double jeopardy                                                                                       |

4

| | |
|---|---|
| | appeal. (Dkt. No. 75). |
| November 1, 2010: | Defendant House of Raeford filed for rehearing and rehearing *en banc* with Fourth Circuit. |
| November 2, 2010: | Fourth Circuit stayed the Mandate until disposition of the petition or motion. (Dkt. No. 76). |
| February 22, 2011: | Fourth Circuit denied defendant House of Raeford's motion for rehearing and rehearing *en banc*. (Dkt. No 78). |
| March 11, 2011: | The Fourth Circuit issued its Mandate. (Dkt. No. 80). |
| April 5, 2011: | District Court set jury trial for May 9, 2011. (Dkt. No. 81). |
| April 7, 2011: | Defendants House of Raeford and Steenblock filed Consent Motion to Stay pending House of Raeford's petition to the U.S. Supreme Court for a writ of *certiorari*. (Dkt. No 82). |
| April 21, 2011: | Chief Judge James A. Beaty, Jr. construed April 7, 2011 Motion to Stay as a Motion to Continue, granted the motion, and excluded from the STA calculation "the time from the date of th[e] Order until the resolution of such Petition and proceedings." (Dkt. No. 83). |
| October 3, 2011: | Supreme Court denied defendant House of Raeford's petition for writ of *certiorari*. |
| October 3, 2011 | Notification by United States to district court clerk's office that the Supreme Court denied defendant's *certiorari* petition, that the Fourth Circuit's mandate had already issued, and that the case could be calendared for trial. (U.S. Exhibit 1). |
| October 11/12, 2011 | Communication between United States and |

5

|                  | district court clerk's office that court would schedule trial once mandate is issued. (U.S. Exhibit 2). |
| January 3, 2012 | Defendant Steenblock filed Motion to Dismiss Superseding Indictment for Speedy Trial Violation; defendant House of Raeford filed Motion to Adopt. |

### III. QUESTIONS PRESENTED

1.   Whether there is a violation of the Speedy Trial Act because more than seventy days have passed since the Indictment or first appearance of defendants Steenblock and House of Raeford, in light of outstanding motions, defendants' continuance request granted by the court, defendant House of Raeford's May 2010 interlocutory appeal, and the United States' prompt notification that the Supreme Court had denied defendant House of Raeford's petition for writ of *certiorari*.

2.   Whether the Court should dismiss the Superseding Indictment with prejudice if it finds a violation of the Speedy Trial Act where the United States has sought a trial date and no prejudice to defendants has resulted.

### IV. ARGUMENT

**A. There Has Been No Violation of the Speedy Trial Act and the Court Should Not Dismiss the Superseding Indictment.**

*1.   The Speedy Trial Act of 1974.*

The Speedy Trial Act of 1974 provides that, in "any case in which a plea of not guilty is entered, the trial . . . shall

6

commence within seventy days" from the later of the "filing date" of the information or indictment, or the defendant's initial appearance before a judicial officer. 18 U.S.C. § 3161(c)(1).

The Act also states that certain "periods of delay shall be excluded in computing . . the time within which the trial . . . must commence." 18 U.S.C. § 3161(h). The relevant periods of delay include:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to-

...

(C) delay resulting any interlocutory appeal;

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

2. *More than Seventy Days of Non-excludable Time has not Elapsed since Defendants' Initial Appearance.*

In this case, the Speedy Trial Act's seventy-day period ("STA clock") began running on December 2, 2009, the date of defendants' initial appearance. Trial was set for January 11, 2010. December 2, 2009 is not included in the STA calculation because the day of the event that triggers the STA clock is not included in the calculation. *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996). Therefore, the first non-excludable day was December 3, 2009.

The STA clock ran until December 16, 2009, when the

7

defendants filed a consent motion to continue trial. (Dkt. No. 15). According to the Fourth Circuit, the day the motion was filed is excluded from the STA clock calculation. *Stoudenmire*, 74 F.3d at 63. Thirteen days ran from December 3, 2009 until December 16, 2009.

The STA clock stopped between December 16, 2009 and December 18, 2009, while the motion to continue was under advisement by the court. On December 18, 2009, the court entered a written order which continued the trial until April 12, 2010 and excluded the time between January 11, 2010 and April 12, 2010.

Defendants contend that the time period of December 19, 2009 through January 11, 2010 is not excluded because the court did not specifically state in its order that such time was excluded. However, that time should be excluded from the STA clock calculation since the defendants asked that the case be continued until the April term. The fact that the court's order did not specifically exclude the 23 days between the date of the order and the date to which the case was continued is not determinative. Defendants' continuance motion requested additional time to review discovery and prepare for trial and specifically stated that the "ends of justice served by the requested continuance outweigh the interest of the public and the Defendants in a speedy trial." It is apparent that defendants sought additional time to prepare for trial due to the volume of

8

discovery and complexities of the case. 18 U.S.C. §
3161(h)(7)(B)(ii). Given the nature of defendants' motion, the
more logical conclusion is that all time between December 19,
2009 and January 11, 2010 should be excluded from the STA clock.
As of the new trial date of April 12, 2010, only thirteen non-
excludable days had run under the STA clock, rather than the 36
alleged by defendants.[3]

Before April 12, 2010, the end of the excludable time under
the court's December 18, 2011 continuance order, the defendants
filed the following pretrial motions:

(1)  February 26, 2010 - defendant House of Raeford's Motion
     to Dismiss the Indictment;

(2)  February 27, 2010 - defendant House of Raeford's Motion
     to Compel Discovery;

(3)  March 1, 2010 - defendant Steenblock's Motion to
     Dismiss the Indictment;

(4)  March 1, 2010 - defendant Steenblock's Motion to Adopt
     Motion to Compel Discovery by House of Raeford Farms,
     Inc.;

(5)  March 17, 2010 - defendant House of Raeford's Motion to
     Strike Portions of the Indictment and to Require
     Election; and

(6)  March 17, 2010 - defendant Steenblock's Motion to
     Strike Portions of the Indictment and to Require
     Election and Motion to Adopt.

During this time period, the United States filed only one

---

[3]  Even if the 23 days between December 19, 2009 and January 11,
2010 were to be added to the STA clock calculation, there still would
be no Speedy Trial Act violation as only 36 days would have run.

9

pretrial motion, a motion to compel discovery on March 17, 2010.

It is well settled that the filing of pretrial motions tolls the STA clock. *United States v. Henderson*, 476 U.S. 321 (1986). In *Henderson,* the Supreme Court held that on its face, 18 U.S.C. § 3161(h)(1)(F)[4] excludes "[a]ny period of delay" caused by "any pretrial motion," "from the filing of the motion through the conclusion of the hearing." *Id.* at 326. The Court further reasoned that the plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not. The Court held that motions that require a hearing exclude the *entire* period between the filing of the motion and the conclusion of the hearing. *Id.* at 329. (emphasis added). Moreover, subsection (D) does not require that a period of delay be "reasonable to be excluded . . ." *Id.* at 326.

More recently, in *United States v. Tinklenberg*, the Supreme Court held that the Speedy Trial Act's pretrial motion exclusion does not require a court to find that the motion actually caused or was expected to cause delay of a trial. 131 S.Ct. 2007, 2011 (2011).

In *United States v. Osteen,* the Fourth Circuit relied on *Henderson* to hold that the filing of pretrial motions stops the

---

[4] 18 U.S.C. § 3161(h)(1)(F) was changed to 18 U.S.C. § 3161(h)(1)(D) in 2008 and will be referred to as such in this brief.

STA clock "and it does not start again until all such motions are resolved." 254 F.3d 521, 525 (4th Cir. 2001). This period is automatically excludable and "delay in resolving outstanding pretrial motions need not be reasonable for this period to be excluded from the Speedy Trial Act calculation." *Id*. Further, the filing of a pretrial motion creates excludable time whether or not the proceedings relating to the motions in fact delayed the trial. *United States v. Dorlouis*, 107 F.3d 248, 253-54 (4th Cir. 1997).

On March 31, 2010, the grand jury returned a Superseding Indictment that included several minor changes but charged no new offenses. Since the changes were minor, the Superseding Indictment did not reset the STA clock. *United States v. Kelly*, 45 F.3d 45, 48 (2d Cir. 1995). The defendants agree that the STA clock was not reset by the Superseding Indictment. As of that date, only thirteen non-excludable days had run under the STA clock. Defendants were arraigned on the Superseding Indictment on April 6, 2010, pretrial motions were due by April 14, 2010, and a hearing for these motions was set for May 3, 2010. The court set a May 9, 2010 trial date.

Between April 12, 2010,(the date the STA clock was tolled under the court's order) and May 3, 2010 (the date of the pretrial motions hearing) defendants filed the following motions:

>  (1) April 12, 2010 - Defendant House of Raeford's Motion to Dismiss Superseding Indictment; House of Raeford's

11

Motion to Strike Surplusage from Superseding Indictment;

(2) April 13, 2010 - Defendant Steenblock's Motion to Dismiss Superseding Indictment and Motion to Adopt; Steenblock's Motion to Strike Surplusage from Indictment and Motion to Adopt; and

(3) April 14, 2010 - Defendant House of Raeford's Motion to Suppress.

The United States filed one pretrial motion, a Motion in Limine to Exclude Evidence, on April 14, 2010.  This motion contained nine distinct requests to exclude evidence.

On May 3, 2010, the court held a hearing on pretrial motions. As of this date, the STA clock was still tolled and only thirteen non-excludable days had elapsed.

All pretrial motions which were not mooted by the Superseding Indictment were still pending.[5]  *See United States v. Gonzales*, 897 F.2d. 1312, 1316-17 (5th Cir.1990) (holding that a superseding indictment does not terminate the exclusionary time for pretrial motions unless the new indictment renders those motions moot).

At the motions hearing, the court denied defendant House of Raeford's Motion to Suppress. (Motions hearing transcript, at 83).  The court heard lengthy argument on the Motion to Dismiss but did not rule on that motion at the hearing.  A written order

---

[5]  The only motions that were mooted by the Superseding Indictment were defendants' February 26, 2010 and March 1, 2010 Motions to Dismiss the Indictment and their March 17, 2010 Motions to Strike Portions of the Indictment and to Require Election.

12

and memorandum denying the Motion to Dismiss the Superseding Indictment was issued on May 27, 2010.

Defendants accurately state that at the motions hearing, the court ruled from the bench on several motions and reserved ruling on others. (Def. Brief at 7). However, defendants fail to mention that the court did not rule on or hear any argument on several other pending pretrial motions.

Defendants contend that as of June 3, 2010, thirty days after the motions hearing, none of the pretrial motions tolled the STA clock, even those that had not been heard by the court at the hearing. (Def. Brief at 7). This argument has no merit since according to the Fourth Circuit, pending pretrial motions toll the STA clock. *United States v. Riley*, 991 F.2d 120 (4th Cir. 1993). Significantly, in a discussion at the motions hearing regarding the speedy trial clock, Judge Thomas D. Schroeder inquired of the parties as to the running of the speedy trial clock. In response, counsel for House of Raeford responded "I think as long as we have motions pending we are nowhere in speedy trial, but we had a flurry of discussions here." Motions hearing transcript at 110-111. (U.S. Exhibit 3, excerpt, pages 110-111). Thus, it would appear that at least as of May, 2010, defendants agreed that the STA clock is tolled while pretrial motions are pending.

The pending motions, those that either were not considered

13

at the hearing or were deferred until trial, toll the STA clock and are discussed below.

   a.   *Defendant Steenblock's April 13, 2010 Motion to Strike Surplusage and Motion to Adopt* (Dkt. No. 42) *Continues to Toll the Speedy Trial Act.*

Defendant Steenblock's April 13, 2010 Motion to Strike Surplusage from Superseding Indictment and Motion to Adopt remains outstanding and tolls the STA clock.  This motion was filed after the Superseding Indictment was returned, was not mentioned or discussed at the motions hearing, and was never withdrawn by defendant Steenblock.

Steenblock's motion adopted a portion of House of Raeford's Motion to Strike Surplusage, but contained an additional important substantive argument which was not in House of Raeford's motion.[6]  This argument concerns Paragraph 10 of the Superseding Indictment which identified defendant Steenblock as a responsible corporate officer in accordance with 33 U.S.C. § 1319(c)(6) of the Clean Water Act.  In his motion, Steenblock argued at length that any reference to his status as a responsible corporate officer should be stricken from the Superseding Indictment because it is not relevant, material to, or essential to the fourteen Clean Water Act counts with which he

---

   [6]   Any motion that tolls the STA clock for Steenblock also tolls the clock for defendant House of Raeford. *United States v. Kellam*, 568 F.3d 125, 137(4th Cir. 2009); *United States v. Jarrell*, 147 F.3d 315, 316 (4th Cir. 1998).

14

is charged. (Dkt. No. 42, at 1-10).

In his motion to strike, Steenblock repeatedly argues that his status as a responsible corporate officer is not a legitimate element of the offenses in this case:

> The government must present "proof of the defendant's knowledge of the facts meeting each essential *element* of the substantive offense."
> ....
> " The [Clean Water] Act ... requires the government to prove Mr. Steenblock knowingly committed each *element* of the charged offenses."
> ....
> "[T"]he government bears the burden of establishing that Mr. Steenblock knowingly violated each *element* of the charged violations of the [Clean Water] Act.

Steenblock Motion to Strike at 5-6, 9-10 (emphasis added).[7]

In his current Motion to Dismiss for a violation of the Speedy Trial Act, Steenblock continued his argument that the elements of proof for a responsible corporate officer reduce the necessary *mens rea* for a knowing violation of the Clean Water Act. Steenblock Motion to Dismiss at 14.[8] His reiteration of

---

[7]    The United States submitted a jury instruction that sets forth the elements the United States must prove beyond a reasonable doubt to convict Steenblock as a responsible corporate officer. These include: (1) that he had knowledge of the facts that gave rise to the violation, that is, that employees of House of Raeford Farms, Inc. were bypassing and causing the bypass of untreated wastewater from the House of Raeford Farms plant to the City POTW; (2) that he had the authority and capacity to prevent the bypasses; and (3) that he failed to prevent the bypasses. 33 U.S.C. § 1319(c). United States' Proposed Jury Instructions, Instruction No. 15, Dkt. No. 61.

[8]    The case law does not support such an argument. *United States v. Dotterweich*, 320 U.S. 277, 284 (1943); *see also Carolene Products Co. v. United States*, 140 F.2d 61, 66 (4th Cir. 1944), *aff'd on other grounds*, 323 U.S. 18 (1944); *United States v. Park*, 421 U.S. 658, 668 (1975); *United States v. Hong*, 243 F.3d 528 (4th Cir. 2001); *United*

the responsible corporate officer argument negates any contention from Steenblock that he has abandoned the motion, that it is moot, or that he no longer wants a hearing on such motion.

Under the court's holding in *Henderson*, pretrial motions that require a hearing are considered pending. *See also United States v. Parker*, 30 F.3d 542, 546 (4th Cir. 1994) (citations omitted). The *Parker* court held that when a hearing is required, subparagraph [(h)(1)(D)] excludes the entire period from the filing of the motion to the conclusion of the hearing on that motion, regardless of whether any delay in holding the hearing was "reasonably necessary." Other circuits have held the same. *See United States v. Staula*, 80 F.3d 596, 601 (1st Cir. 1996) (holding that for motions that require a hearing, subsection 18 U.S.C. § 3161(h)(1)(D) excludes time between filing of motion and hearing on motion, even if delay is "over long, inexplicable, or unreasonable"). Steenblock's Motion to Strike Surplusage - specifically, the language regarding the responsible corporate officer doctrine - is a substantive one that requires a hearing. Surely the court would not rule on a motion of this significance without hearing oral argument from both parties. It addresses an element of the offense to be proved at trial and is critical to

_____

*States v. Iverson*, 162 F.3d 1015, 1022-25 (9th Cir. 1998).

16

the case against Steenblock.[9]  As such, it is still pending and
continues to toll the STA clock.

> b.   *The Outstanding Motions to Compel Discovery (Dkt. No.*
>      *21, 23, and 30) Continue to Toll the Speedy Trial Act.*

There are three pretrial motions to compel discovery which
were not addressed at the May 3, 2010 motions hearing.  Motions
to compel discovery are pretrial motions that toll the STA clock
under 18 U.S.C. § 1361(h)(1)(D).  *United States v. Nixon*, 779
F.2d 126, 131 (2d Cir. 1985).  As with defendant Steenblock's
Motion to Strike Surplusage, the court did not rule on, address,
or mention any of the motions to compel.  Although these motions
were filed after the first Indictment and before the Superseding
Indictment, these pretrial motions were never withdrawn and are
still pending and thus continue to toll the STA clock.

> c.   *Defendant House of Raeford's Motion to Strike*
>      *Surplusage (Dkt No. 41) Continues to Toll the Speedy*
>      *Trial Act.*

Defendants agree that not all motions, such as the House of
Raeford's Motion to Strike Surplusage, were heard at the May 3,
2010 hearing. Def. Brief at. 7.  However, they contend that any
tolling of the STA clock due to the filing of any pretrial
motions ceased on June 3, 2010, thirty days after the motions
hearing.

_____

[9]   This issue was thoroughly briefed by both parties as Steenblock
devoted over eight pages to the responsible corporate officer argument
in his Motion to Strike Surplusage and the United States responded
with a lengthy argument.

At the motions hearing, the court did acknowledge House of Raeford's Motion to Strike Surplusage (Dkt. No. 40) but stated that "I am not – given the hour, I am not going to take that one up at this time then, and I will resolve that if and when we get to a trial." Motions hearing transcript at 81-82. It is clear from this language that the court intended to take this matter up at a later time and hear argument from both parties.[10]

The Fourth Circuit addressed a similar situation in *United States v. Riley*, 991 F.2d 120 (4th Cir. 1993) In *Riley*, the defendants' pretrial motion to suppress was deferred until trial. After several superseding indictments, trial commenced but a mistrial was declared after one day of trial. The motion to suppress was not heard until approximately five months later at the beginning of the second trial. 991 F.2d at 123.[11] On appeal, the defendants claimed that the STA clock was no longer tolled by a pretrial motion since it lost its character as a "pretrial"

---

[10] In an opinion discussing when a "hearing is necessary" on a pretrial motion, the First Circuit stated that "the district court is in a better position to determine the necessity of a hearing than we are, and although the delay was significant, we are loath to question the court's judgment in this area absent obvious subterfuge." *United States v. Salimonu*, 182 F.3d 63, 68 (1st Cir. 1999)

[11] Similar to Judge Thomas D. Schroeder's decision to defer ruling on defendants' pretrial Motions to Strike Surplusage until trial, the *Riley* district court deferred ruling on the defendants' pretrial motion to suppress stating that "the Court is not in a position to rule on the motions to suppress at this time. If at trial the Government decides to offer the evidence, the Court will conduct a hearing to determine its admissibility at that time." *Riley*, 991 F.2d at 123.

18

motion for purposes of 18 U.S.C. § 1361 and became an evidentiary motion when the first trial began. The Fourth Circuit rejected this argument based on a "straigtforward reading" of the statute. *Id*. In holding that the defendants' pretrial motion to suppress kept its character as "pretrial," the *Riley* court wrote:

> Section 3161(h) provides that the period between the date that a pretrial motion is filed and the date on which a hearing on the motion is concluded is to be excluded from the 70 days by which commencement of trial is mandated. Federal Rule of Criminal Procedure 12(b) specifically defines a pretrial motion as a motion "capable of determination without the trial of the general issue," and it lists specifically a motion to suppress. (citation omitted). We note that the rule does not define the term pretrial by whether a motion is *in fact* decided before trial.

*Id.*

The *Riley* court rejected the defendants' argument that the pretrial motion to suppress died when a mistrial was entered at the first trial. The court held that the mistrial did not void pending motions. The *Riley* court, relying on *Henderson*, wrote that "there is no requirement that the time between the filing of the pretrial motion and the hearing be reasonable." *Id*. at 124. The Fourth Circuit held all time between the filing of the pretrial motion and the hearing on it at trial was properly excluded in the speedy trial clock calculation. *Id*. at 124.

As in *Riley*, defendant House of Raeford's Motion to Strike Surplusage is capable of being determined without a trial on the general issues. Further, defendant's lengthy interlocutory appeal

19

did not void the pending motions. Thus, all time between the filing date of the motion and the court's hearing on it should be excluded under the Speedy Trial Act.

> d. *The Deferred Portion of the United States' Motion in Limine Continues to Toll the Speedy Trial Act (Dkt. No. 44).*

Finally, there are outstanding motions in limine from the May 3, 2010 motions hearing. While we are unaware of any Fourth Circuit case law on whether motions in limine are pretrial motions which trigger excludable time under the Speedy Trial Act, other circuits have held that motions in limine are pre-trial motions. *See United States v. Sposito*, 106 F.3d 1042, 1044-45 (1st Cir. 1997) (holding government motion in limine is a pretrial motion that tolled speedy trial clock); *see also United States v. Santoyo*, 890 F.2d 726, 728 (5th Cir. 1989)(holding that defendant's motion in limine tolled the clock where the motion remained pending until trial even though "the court carried the motion for hearing during trial.")[12]; *United States v. Johnson*, 32 F.3d 304, 306 (7th Cir. 1994) (holding that the period the court spent deciding government's motion in limine to prohibit evidence of entrapment was exludable).

At the motions hearing, the court entertained brief

---

[12] The *Santoyo* court also held that pending motions will toll the trial clock indefinitely; there is no independent requirement that the delay attributable to the motions be 'reasonable.'" (citing United States v. Welch, 810 F.2d 485, 488, (5th Cir. 1987) (citations omitted).

Case 1:09-cr-00395-JAB   Document 89   Filed 01/12/12   Page 20 of 33

arguments on most of the nine separate requests to exclude evidence in the United States' Motion in Limine, but reserved ruling on "part H" of the motion in limine, which sought to exclude evidence of the City of Raeford's NPDES Permit violations and mis-management of sludge disposal. Motions hearing transcript at 92-93. The court also specifically reserved ruling on "Part C" of the Motion in Limine, to exclude evidence of lack of environmental harm. While the court did hear a brief argument regarding this motion, Judge Thomas D. Schroeder stated that he would "reserve ruling on that for the moment because I want to think more about the defendant's argument that somehow – because this is a violation of the permit that's a delegated authority, somehow environmental harm is relevant." Motions hearing transcript at 95, Dkt. No. 77. He also stated that he would "just have to think about that one." *Id*. at 105. Judge Thomas D. Schroeder did not have an adequate opportunity to rule on these motions since defendant House of Raeford appealed to the Fourth Circuit on May 28, 2010. The portions of the Motion in Limine that were never heard were deferred until trial, are pending, and continue to toll the STA clock until their resolution. *See United States v. Santoyo*, 890 F.2d at 728. (holding that pending motions toll the speedy trial clock indefinitely, and there is no independent requirement that the delay be reasonable.)

The defendants argue that the court had 30 days from the May 3, 2010 motions hearing to rule on all motions, regardless of whether they were argued and then held over for resolution at trial or never heard at all. Thus, they contend that the pretrial motions no longer toll the STA clock as of June 3, 2010. This argument is flawed given that the court never heard oral argument on several of the pretrial motions. These motions are still pending as they were in *Riley*. Moreover, the motions on which the court did hear argument but did not rule were deferred until trial. Therefore, these motions also are still active and toll the STA clock.

The total number of non-excludable days in this case is thirteen. There has been no violation of the Speedy Trial Clock and the Superseding Indictment should not be dismissed.

**B. If the Superseding Indictment is Dismissed, it Should be Without Prejudice.**

If the court finds that a Speedy Trial Act violation has occurred and orders the Superseding Indictment dismissed, the dismissal should be without prejudice. The statute and case law require the court to consider three factors in deciding whether to dismiss with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and the administration of

22

justice." 18 U.S.C. § 3162(a)(1); *United States v. Taylor*, 487 U.S. 326, 333 (1988); *United States v. Jones*, 887 F.2d 492, 494 (4th Cir. 1989). In addition, the court must assess whether the defendant has been prejudiced by the violation. *Taylor*, 487 U.S. at 334; *United States v. McGrier*, 848 F.Supp. 649, 654-55 (S.D.W.V.), *aff'd* 1996 WL 406247 (4th Cir. 1994).

In setting forth these factors, the Speedy Trial Act "does not contain a default presumption one way or the other." *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004)(citing Taylor, 487 U.S. at 334). An analysis of these factors in this case shows that any dismissal of the Superseding Indictment should be without prejudice.

1. *The Crimes Alleged Against the Defendants are Serious Offenses*.

Defendants are charged with 14 felony violations of the Clean Water Act, 33 U.S.C. § 1319(c)(2)(A). As alleged in the Superseding Indictment, defendants knowingly bypassed and caused the bypass of untreated wastewater from the House of Raeford facility to the City of Raeford wastewater treatment plant, in violation of a permit that had been issued by the City of Raeford in accordance with the Clean Water Act.

The Speedy Trial Act's requirement that the court consider the seriousness of the offense "simply demands the gravity of the crime be carefully considered as a factor in deciding whether to dismiss with or without prejudice." *United States v. Pierce*, 17

23

F.3d 146, 149 (6th Cir. 1994). "There are many crimes more serious than [the defendants'] as well as many less serious. What is required is that the court consider the factor and properly weigh it with the other factors." *Id*. The crimes charged here are serious and a dismissal without prejudice is the correct result under the Speedy Trial Act, for a number of reasons.

The defendants claim that the alleged crimes are not serious. Steenblock Motion to Dismiss, Dkt. No. 87 at 9-11, House of Raeford Motion to Dismiss, Dkt. No. 88 at 3-5. Defendants base their claim on the defense they have proffered several times to this Court: the illegal bypasses were committed because they believed the bypasses were authorized under a Consent Order that was in place between the House of Raeford and the City. The defendants have argued repeatedly in pretrial motions that provisions of the Consent Order favor their interpretation or at best are ambiguous. The United States in turn has argued and will present evidence at trial that the Consent Order never allowed for the illegal discharges and defendants knew this.

Defendants attempt to minimize the seriousness of this case by comparing it to a "personal dispute between warring parents," *United States v. Bundu*, 479 F.Supp. 2d 195, 199 (D. Mass. 2007). In *Bundu*, the charged crime, international parental kidnaping, 18

24

U.S.C. § 1204, resulted from a custody dispute between a husband and wife. *Id*. at 197-99. This is very serious indeed. Nevertheless, the prosecution here involves deliberate acts and failures to act committed over an 18-month period, by a large company and its plant manager, in violation of a permit that was issued under the authority of the federal government in order to protect human health and the environment. Just because the defendants allege that the charged crimes are not serious does not make it so.

Steenblock also argues that his status as a responsible corporate officer somehow mitigates his culpability. That is, that because he was only aware of the violations, but did not personally commit them, he should not be held criminally responsible. As explained above, under the Clean Water Act, the responsible corporate officer doctrine holds that if a manager such as Steenblock is aware of criminal violations, had the authority to stop them, and failed to do so, he is in fact criminally liable. It is for the jury to decide whether the defenses, should they be presented at trial, are credible.

Second, both defendants claim that the Department of Justice has not prosecuted illegal discharges into sewer systems where no environmental harm was alleged. Steenblock Motion to Dismiss, Dkt. No. 87 at 11. Defendant House of Raeford states "[a]s far as we can tell, no party has ever been subjected to prosecution

25

for discharging into a municipal sewer, where due to effective treatment by the municipality, the alleged violations did not reach the navigable water."  House of Raeford Motion to Dismiss, Dkt. No. 88 at 3.  As an initial matter, any environmental harm or lack thereof, is not a required element of the offenses, and would be relevant only to sentencing.

Further, defendants' claims are inaccurate.  The Department of Justice has prosecuted similar crimes; that is, violations of pretreatment permits where no harm was alleged.[13]  Critical to the functioning of the Clean Water Act is enforcement against industrial users who are required to comply with permits and pretreat their waste to protect municipal wastewater treatment plants, to prevent pass-through of pollutants that plants do not treat, and to prevent the discharge of pollutants that reach or can reach the nation's waters.  Defendants contend that a violation of the law enacted to protect the navigable waters of the United States does not become "serious" until their illegal discharges actually contaminate the nation's waters. Such logic does not make the crimes any less serious, but would eviscerate the very purpose of the pretreatment provisions of the Clean Water Act.  Accordingly, this factor weighs in favor of dismissal without prejudice.

_____

[13]  *See* U.S. Department of Justice, U.S. Attorney's Office Press Releases, U.S. Exhibit 3.

2. *The Facts and Circumstances Do Not Warrant a Dismissal With Prejudice*.

It is well established that a dismissal with prejudice is inappropriate when there is no showing of a deliberate attempt by the government to evade the Speedy Trial Act. *United States v. McGreier*, 848 F.Supp. at 653. Nor is dismissal with prejudice warranted when there is no evidence that the government sought to gain a tactical advantage. *United States v. Jones*, 887 F.2d at 495. Further, dismissal with prejudice is not appropriate absent a showing of repeated negligence by the government that results in failing to comply with the Speedy Trial Act. *United States v. Mancia-Perez*, 331 F.3d 464, 467 (5th Cir. 2003); *United States v. Hope*, 202 F.Supp. 458, 460 (E.D.N.C. 2001).

There is no evidence to show that any non-excludable delay was ever caused by the United States purposefully seeking to evade the statute or gain any tactical advantage at trial. Nor is there any evidence of recurrent negligence by the United States. The United States has complied with all deadlines set by the court.[14] At the May 3, 2010 motions hearing, the government informed the court and defendants that it was ready to proceed to trial. Dkt. No. 77 at 106. On May 27, 2010, the court denied

---

*Compare*: *United States v. Harden*, 1998 WL 390479 (4th Cir. 1998)(dismissal with prejudice when delay caused by a "groundless" *ex parte* motion requesting an extension).

27

House of Raeford's Motion to Dismiss for double jeopardy. Dkt. No. 66. A substantial delay then took place when defendant House of Raeford filed its appeal before the Court of Appeals, moved for re-hearing en banc when its appeal was denied, and ultimately petitioned the Supreme Court for a writ of *certiorari*.

The appellate process took nearly 17 months. Throughout this time period, defendant Steenblock, who had no standing to bring a motion to dismiss for double jeopardy, did not seek to proceed to trial. Nor did he seek resolution of his pending Motion to Strike his status as a responsible corporate officer, a critical element in his prosecution. To the contrary, on three occasions defendant Steenblock instead joined with House of Raeford in its motions to stay the case during the appellate process, resulting in a 17-month hiatus for Steenblock.

Upon learning that the Supreme Court had denied House of Raeford's petition for a writ of *certiorari*, it was the United States, not the defendants, who immediately provided notification to the court and requested that the case could be placed on the trial calendar.[15] There was no effort whatsoever by the United States to delay prosecution. Defendants were "as well-placed as [were] the prosecutors to remind the judge," but to our knowledge never have done so. *United States v. Dessesaure*, 556 F.3d. 83, 86 (1st Cir. 2009). Under this factor, a dismissal without

---

[15] *See* U.S. Exhibit 1.

prejudice is warranted.

3. *Reprosecution of this Case Would not Have an Adverse Impact on the Administration of the Speedy Trial Act or the Administration of Justice*.

When there is "no evidence that a delay in the trial date was for the government to obtain a tactical advantage, the delay was purposeful or that the [defendants] [were] prejudiced by the delay," dismissal without prejudice is the appropriate disposition. *United States v. Jones*, 887 F.2d at 495 (citing *United States v. Simmons*, 786 F.2d 479 (2d Cir. 1986)). As demonstrated above, none of these adverse circumstances are present in this case, and any dismissal should be without prejudice.

There is no evidence that reprosecution would have an adverse impact upon the administration of the Speedy Trial Act. The delay was not the result of repeated negligence and the United States did not seek or obtain any tactical advantage for a reprosecution. In cases involving significantly longer delays, courts have found that dismissal without prejudice is still appropriate. *United States v. Simmons*, 786 F.2d at 485 (four months); *United States v. Dessesaure*, 556 F.3d at 86 (11 months).

Consistent with the United State's efforts in this case, if a dismissal without prejudice is ordered, the United States will seek re-indictment, pursuant to 18 U.S.C. § 3288:

29

Whenever an indictment or information charging a felony is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment or information.

Re-indictment will bring no untoward burden upon this court's resources that would adversely impact the administration of justice. The case has not yet been tried and reprosecution would not cause a second trial. *United States v. Koory*, 20 F.3d 844, 849 (8th Cir. 1994). Neither defendant can claim that dismissal with prejudice is necessary as a deterrent in this case to prevent violations of the Speedy Trial Act. Conversely, the public maintains an interest in seeing the defendants brought to trial. *United States v. Martinez-Espinoza*, 299 F.3d 414, 419 (5th Cir. 2002). Accordingly, if dismissal is ordered, it should be without prejudice.

   4.   *The Defendants Will Suffer No Prejudice as a Result of a Reprosecution*.

In judging whether a defendant has suffered prejudice, the court must consider those interests the speedy trial was designed to protect:

   1) preventing oppressive pretrial incarceration; 2) minimizing anxiety and concern of the accused; and 3) limiting the possibility that the defense will be impaired, whether through the death of a witness, impaired witness memory, or the defendant's inability to prepare a defense while incarcerated.

*United States v. McGrier*, 848 F.Supp. at 654-55 (*quoting Barker*

30

*v. Wingo*, 407 U.S. 514, 532-33 (1972). The Supreme Court has held that the "most serious of these is the last, because the defendant's inability to adequately prepare his case skews the fairness of the entire system." *Id.*

In this case, the first and third interests concerning incarceration are not implicated. As noted above, Steenblock has not been incarcerated or detained, nor has House of Raeford been prohibited from operating its turkey processing plant. With regard to the second factor, there is no evidence Steenblock or any managers or employees of House of Raeford have suffered any undue anxiety or concern about prosecution. Under these circumstances, dismissal with prejudice is not warranted. *Compare United States v. Ford*, 2008 WL 2959726 (4th Cir. 2008)(dismissal without prejudice was warranted even when defendant lost security clearance as result of allegations of unauthorized possession of national defense information).

Regarding the third factor, there is no evidence that the defense for either defendant will be impaired. The defendants have not proffered any witnesses or experts who have been affected by the delay. In fact, seventeen months of delay were the result of defendant House of Raeford's interlocutory appeal, for which both defendants agreed to a stay of the proceedings.

In sum, the record shows that assessment of all the factors under 18 U.S.C. § 3162(a)(2) weighs in favor of the conclusion

31

that if the Superseding Indictment is dismissed, it should be without prejudice.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that defendants' Motion to Dismiss the Superseding Indictment under the Speedy Trial Act be denied. Further, the United States requests that if the court dismisses the Superseding Indictment, it do so without prejudice.

Respectfully submitted,

IGNACIA S. MORENO
ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources
Division
U.S. Department of Justice

By:   /s/ Mary Dee Carraway
MARY DEE CARRAWAY
Trial Attorney
NC Bar No. 19864
Environmental Crimes Section
U.S. Department of Justice
P.O. Box 23985
L'Enfant Plaza Station
Washington, D.C.  20026-3985
(202) 305-0373

 /s/ Daniel W. Dooher
DANIEL W. DOOHER
Trial Attorney
NYS BAR 2041416
Environmental Crimes Section
U.S. Department of Justice
PO Box 23985
L'Enfant Plaza Station
Washington, DC 20026-3985
(202) 305-0351

32

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 12, 2012, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

        Kearns Davis, Esq.
        Darrell A. Fruth, Esq.
        Wes J. Camden, Esq.
        H. Gerald Beaver, Esq.
        Ripley Rand, Esq.
        Frank Joseph Chut, Jr., Esq.

                                /s/ Mary Dee Carraway
                               MARY DEE CARRAWAY
                               Trial Attorney
                               NC Bar No. # 19864
                               Environmental Crimes Section
                               U.S. Department of Justice
                               PO Box 23985
                               L'Enfant Plaza Station
                               Washington, DC 20026-3985
                               (202) 305-0373